******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SIMONA CASARINI BARCELO *v.* DANIEL BARCELO
(AC 36276)

Beach, Keller and Pellegrino, Js.

*Argued January 21—officially released June 30, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, S. Richards, J.)

*Thomas M. Shanley*, for the appellant (plaintiff).

*Samuel V. Schoonmaker IV*, with whom was *Wendy
Dunne DiChristina*, for the appellee (defendant).

*Opinion*

KELLER, J. The plaintiff, Simona Casarini Barcelo, appeals from the trial court's financial orders entered in the context of its judgment of dissolution. She claims that the court erred by (1) awarding her time limited alimony and precluding modification of her time limited alimony award, (2) failing to order Daniel Barcelo, the defendant, to pay for the parties' minor children's private school tuitions and failing to reserve jurisdiction to enter an order regarding their minor children's postsecondary education, (3) ordering her to refinance the parties' existing mortgage on their marital home, pay the defendant 50 percent of the net equity in the marital home, and immediately remove his name from the existing mortgage on the marital home, (4) awarding sole ownership of a Louis XVI armoire to the defendant, (5) ordering the defendant to pay her 15 percent of his future bonus income by way of a supplemental child support order, and (6) ordering the parties to submit to arbitration to resolve any future disputes over the distribution of their personal property. We reverse all of the court's financial orders in the judgment of dissolution and remand the matter for the court to conduct further proceedings to reconsider all of its financial orders[1] on the basis of our conclusion that the court erred by (1) ordering the defendant, by way of a supplemental child support order, to pay the plaintiff 15 percent of his future bonus income, (2) failing to provide notice to the parties, prior to rendering its judgment of dissolution, that it would not reserve jurisdiction to enter postsecondary educational support orders for the parties' minor children, and (3) ordering the parties to submit to arbitration to resolve any future disputes over the distribution of their personal property. We affirm the judgment in all other respects.[2]

The following procedural history is relevant here. The plaintiff filed an action for dissolution in July, 2011, and the matter was tried before the court over the course of three days in May, 2013. The court rendered the judgment of dissolution on November 5, 2013. In rendering its decision, the court found and considered the following facts, which are relevant to this appeal. "The parties were married on September 17, 1994, in Pals, Spain. Two children are the issue of the parties' marriage. . . .

"[At the time of the dissolution, the] plaintiff [was] a forty-four year old woman in good health. She has a degree in marketing from Syracuse University. The plaintiff was employed at Giovanni Piranesi from 1993 until the birth of their son in 2000 and has been working as a part time residential realtor since 2008. From 2008 through [2013] the plaintiff has earned the following amounts after expenses: $164 in 2008, $54 in 2009, $3700 in 2010, $1517 in 2011, $18,000 in 2012 and $2000 year to date without expenses calculated and [she] antici-

pates an additional commission of $14,000 in 2013. [At the time of the dissolution, the] defendant [was] a forty-three year old man in good health. He has a bachelor's degree from Syracuse University and is a chartered financial analyst. The defendant has held various jobs in finance with a specialization in the oil and gas industry. . . . The defendant is presently employed by Rus Petro with an annual salary of $70,000 plus a discretionary bonus in an undetermined amount. Their eldest child has attended . . . a private school, since fifth grade. The tuition [for the 2013 academic year] was $40,000. Their youngest child has attended . . . a private school for the last two years. The tuition for his school [for the 2013 academic year] was $10,000. . . .

"The parties also received or had access to, either individually or as a couple, monetary gifts from the plaintiff's parents . . . throughout the course of the parties' marriage that enabled them to live beyond their means based on their collective earnings . . . . Ultimately, all things considered . . . the cause of the breakdown of the parties' marriage was their irreconcilable differences stemming from their respective extramarital affair(s) and their difficulty in being intimate with each other."

The plaintiff filed the present appeal following the court's judgment of dissolution. Specifically, she is appealing orders that the court entered in the judgment concerning alimony, real and personal property distributions, child support, and arbitration, as well as its failure to enter orders concerning expenses for the parties' minor children's private school tuitions and postsecondary educational support. Additional facts will be set forth as necessary.

We begin by setting forth the general standard of review governing a court's orders in a judgment of dissolution. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the

law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Cimino* v. *Cimino*, 155 Conn. App. 298, 300–301, 111 A.3d 886, cert. denied, 316 Conn. 912,     A.3d.     (2015).

"A reviewing court must indulge every reasonable presumption in favor of the correctness of the trial court's action to determine ultimately whether the court could reasonably conclude as it did. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Internal quotation marks omitted.) Id., 303.

In addition, we must review whether the court properly considered the child support guidelines; Regs., Conn. State Agencies § 46b-251a-1 et seq.; when it entered the supplemental child support order. "The question of whether, and to what extent, the child support guidelines apply . . . is a question of law over which this court . . . exercise[s] plenary review." (Internal quotation marks omitted.) *Dowling* v. *Szymczak*, 309 Conn. 390, 399, 72 A.3d 1 (2013).

I

Among the plaintiff's claims is her assertion that the court erred by entering a supplemental child support order that awarded her 15 percent of the defendant's future bonus income without adequately considering the financial needs of the parties' minor children or abiding by the child support guidelines. We agree that the court failed to properly consider the child support guidelines and failed to consider the financial needs of the children when entering the supplemental child support order.

The following additional facts are relevant here. At trial, the plaintiff requested that the court impute an earning capacity for the defendant, who claimed to be earning a salary of $70,000 per year with an expectation of a bonus that had yet to be determined. The court, after reviewing the defendant's annual net earnings between 2005 and 2011, determined that the defendant consistently had been a high wage earner, and imputed an earning capacity to the defendant in an annual gross amount of $250,000, which the court calculated as an imputed net weekly income of $2985.[3] The court also found the plaintiff's weekly net income to be $347. Without noting the required presumptive amount of child support due under the child support guidelines on the basis of the parties' actual combined net weekly incomes, in deviation of the guidelines, based on a calculation of the defendant's imputed net income, the court entered the following child support order, in relevant part: "[T]he defendant shall pay child support to

the plaintiff in the amount of $512 per week . . . until the parties' daughter . . . attains the age of eighteen (18), or if she is still attending high school when she attains the age of eighteen (18), until she completes her high school education or attains age nineteen (19), whichever event shall first occur. Thereafter, the defendant shall pay child support to the plaintiff for the parties' son . . . consistent with the child support guidelines then in effect until the same age conditions occur as set forth herein for [the parties' daughter].

"The defendant shall pay to the plaintiff fifteen (15%) percent of any bonus accruing to himself, regardless of the source, during the aforementioned child support period."[4]

The court also ordered the defendant to maintain medical insurance for the benefit of the minor children so long as it was available through and subsidized at substantially the same level by his employer, and ordered the parties to share equally all unreimbursed medical and dental expenses for the minor children until they graduated from high school or attained the age of nineteen, whichever first occurred.[5] In addition, the court ordered the parties to be equally responsible for all costs related to the minor children's extracurricular activities.

"In appropriate cases, the [child support guidelines] . . . permit the entry of a supplemental order . . . to pay a percentage of a future lump sum payment, such as a bonus. Such supplemental orders may be entered only when . . . the percentage is generally consistent with the schedule [contained within the child support guidelines]." (Internal quotation marks omitted.) *Maturo* v. *Maturo*, 296 Conn. 80, 91–92, 995 A.2d 1 (2010); Regs., Conn. State Agencies § 46b-215a-2b (c) (1) (B). The child support guidelines contain a schedule that sets forth the presumptive amount of child support a court must award when entering a child support order, absent an appropriate deviation. Regs., Conn. State Agencies § 46b-215a-2b (f). The presumptive amounts of child support set forth in the schedule are calculated on the basis of the parties' actual combined net weekly income and the number of minor children they have. Id., § 46b-215a-2b (f). The maximum amount of combined net weekly income that the schedule sets presumptive amounts of child support for is $4000. Id., § 46b-215a-2b (f). Parties who have two minor children, and a combined net weekly income above the combined net weekly income the court calculated for the parties, $3332, pay a percentage of their combined net weekly income that gradually declines from 17.17 percent at a combined net weekly income level of $3340, or $573 per week in child support, to 15.89 percent at a combined net weekly income of $4000, or $636 per week in child support. Id., § 46b-215a-2b (f). Parties with one minor child and a combined net weekly income above

$3332 pay a percentage of their combined net weekly income that gradually declines from 12.90 percent at a combined net weekly income of $3340, or $431 per week, to 11.83 percent of a combined net weekly income of $4000, or $473 per week. Id., § 46b-215a-2b (f).

Our Supreme Court previously has addressed the interplay between the child support guidelines and supplemental child support orders that award a percentage of a party's bonus income. In *Maturo* v. *Maturo*, supra, 296 Conn. 89, a plurality of the court held that a dissolution court erred by ordering the defendant to pay 20 percent of his annual net bonus income to the plaintiff as a supplemental child support order. The court emphasized that "all child support awards must be made in accordance with the principles established [in the child support guidelines] to ensure that such awards promote equity, uniformity and consistency for children at all income levels. . . . [All child support awards] should follow the principle expressly acknowledged in the preamble [of the child support guidelines] and reflected in the schedule that the child support obligation as a percentage of combined net weekly income should decline as income level rises." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 94–95.[6] The court noted, "[t]he effect of unrestrained child support awards in high income cases is a potential windfall that transfers wealth from one spouse to another or from one spouse to the children under the guise of child support," and "the award of 20 percent of the defendant's indeterminate annual bonus without any justification relating to the characteristics or needs of the children closely resembles the 'disguise[d] alimony' this court disapproved of in *Brown* v. *Brown*, 190 Conn. 345, 349, 460 A.2d 1287 (1983)." (Emphasis omitted.) *Maturo* v. *Maturo*, supra, 105. The court concluded that the dissolution court's open-ended allocation of 20 percent of the defendant's net bonus income for child support was improper because it was inconsistent with the schedule contained in the child support guidelines and it violated the principle that a decreased percentage of parties' combined net weekly income should be awarded as the parties' income level rises. Id., 97. Consistent with the child support guidelines' schedule, absent a proper deviation,[7] a court may not order parties to pay less than the presumptive amount set forth in the child support guidelines, $636, or more than 15.89 percent of their combined net weekly income in child support if they make $4000 or more in combined net weekly income and have two minor children. Regs., Conn. State Agencies § 46b-215a-2b (f). In *Maturo*, the combined net weekly income of the parties exceeded $4000, and they had two minor children. *Maturo* v. *Maturo*, supra, 96. Therefore, the court concluded that the dissolution court abused its discretion by ordering the defendant to pay 20 percent, rather than, at most, 15.89 percent, of his net bonus income

as part of the child support order, absent a proper deviation.[8] Id., 97–99.

In addition, in *Maturo*, the court determined it was error for the trial court to fail to provide "any explicit justification for the award of bonus income that was related to the financial *or* nonfinancial needs or characteristics of the children under General Statutes § 46b-84 (d)[9]. . . . In fact, there is no evidence that the court considered *anything* other than the defendant's income and earning capacity in making the child support award. Thus, absent a finding as to how the additional funds would be used for the benefit of the children and how the award was related to the factors identified in § 46b-84 (d), we conclude that the court exceeded its legitimate discretion." (Emphasis in original; footnote added.) Id., 103.

In a similar case, our Supreme Court held that a dissolution court erred by ordering the defendant to pay 20 percent of his annual net bonus income to the plaintiff as a supplemental child support order. *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 370, 999 A.2d 721 (2010). Relying on *Maturo* and reciting the principles detailed therein, the court concluded that the dissolution court's order was improper. Id., 368–70. In *Misthopoulos*, the parties had a combined net weekly income of $2080 and had three minor children. Id., 368. Pursuant to the child support guidelines, absent a proper deviation, courts may not order parties with three minor children and a combined net weekly income of $4000 or more to pay beyond 17.16 percent of their combined net weekly income in child support. Id., 369; Regs., Conn. State Agencies § 46b-215a-2b (f). The defendant in *Misthopoulos* had earned $565,740 as a bonus the prior year, which, pursuant to the 20 percent supplemental child support order, increased the weekly child support award by $2175, or approximately four times the amount of weekly child support the defendant was ordered to pay, $477, on the basis of the parties' combined net weekly income of $2080 per week, or $108,160 per year. *Misthopoulos* v. *Misthopoulos*, supra, 368. The Supreme Court found that the award of 20 percent of the defendant's net cash bonus and tax refunds as additional child support was not in compliance with the child support guidelines' principles and in excess of the 17.16 maximum percentage allowed under the child support guidelines for three minor children at a combined net weekly income of $4000 or more. Id., 368–69. Therefore, the court concluded that the dissolution court abused its discretion by ordering the defendant to pay 20 percent, rather than, at most, 17.16 percent, of his net bonus income as part of the child support order, absent a proper deviation.[10] Id., 370.

Our review of the principles expressed in *Maturo* and *Misthopoulos* leads us to conclude that the court's supplemental child support order in the present case,

awarding the plaintiff 15 percent of the defendant's undetermined future bonus income, was improper for several reasons.

First, the court's order did not specify whether the court was referring to 15 percent of the defendant's future *gross* or *net* bonus income. This was improper. "It is clear that a trial court must base . . . child support orders on the available net income of the parties." (Internal quotation marks omitted.) *Evans* v. *Taylor*, 67 Conn. App. 108, 111, 786 A.2d 525 (2001).

Second, noting the defendant was currently making a salary of $70,000 with an expectation of a bonus, the court imputed an earning capacity to him of $250,000 annually and based its weekly child support order of $512 on the higher amount. A court in issuing a child support order must make a specific finding on the record as to the presumptive amount of child support due under the child support guidelines or any findings regarding a deviation from that amount. See *Deshpande* v. *Deshpande*, 142 Conn. App. 471, 478–79, 65 A.3d 12 (2013). In *Fox* v. *Fox*, 152 Conn. App. 611, 99 A.3d 1206, cert. denied, 314 Conn. 945, 103 A.3d 977 (2014), this court held that "[a] party's earning capacity is a deviation criterion under the guidelines, and, therefore, a court must specifically invoke the criterion and specifically explain its justification for calculating a party's child support obligation by virtue of the criterion instead of by virtue of the procedures outlined in the guidelines." Id., 633. The court in the present case failed to cite the presumptive support amount calculated with the defendant's actual net income, and then did not invoke the defendant's earning capacity as a deviation criterion in calculating his child support obligation. It also did not explain why an obligation calculated in accordance with the defendant's actual income, pursuant to the child support guidelines, would be inequitable or inappropriate, thus warranting instead an obligation calculated in accordance with his earning capacity.

The court then ordered the defendant to pay 15 percent of any of his bonus income, not 15 percent of any bonus income in excess of his $250,000 earning capacity. As a result of this apparent ambiguity, the court, without justifying a deviation, permitted the plaintiff to "double dip" and collect child support in excess of the child support guidelines with respect to whatever bonus income the defendant earned above his $70,000 salary but below his imputed earning capacity of $250,000. For example, the court determined the plaintiff's imputed net weekly income to be $347. If the defendant only received his salary of $70,000 and a net weekly bonus income of $1000 in a given year, he would be obligated to pay not only the $512 weekly child support calculated on the basis of his net weekly earning capacity of $2985, but an additional 15 percent of his $1000 net weekly bonus income, thereby increasing

his weekly child support obligation to $662, an amount which deviates well above the guidelines when his imputed net weekly income, with bonus, does not exceed his $2985 net weekly earning capacity.

Third, under the principles set forth in *Maturo* and *Misthopoulos*, pursuant to the child support guidelines, absent finding a proper deviation, courts may not order parties with a combined net weekly income of $4000 or more and two minor children to pay beyond 15.89 percent of their combined net weekly income in child support. Regs., Conn. State Agencies § 46b-215a-2b (f). When parties have one minor child and earn a combined net weekly income of $4000 or more, a court may not order them to pay beyond 11.83 percent of their combined net weekly income in child support. Id., § 46b-215a-2b (f). Therefore, in the event that the parties' combined net weekly income reached or exceeded $4000, the court also erred in failing to indicate why its open-ended supplemental child support order of 15 percent of the defendant's bonus income, without any indicated percentage decline once the parties' eldest child attained the age of eighteen, or in the alternative, completed high school or attained the age of nineteen, whichever event first occurred, was a justifiable deviation from the guidelines.

Finally, the court made no specific finding regarding how its open-ended award of bonus income, in the event that the parties' combined net weekly income reached or exceeded $4000, would foster the needs of the children.[11] We conclude that the court erred by failing to make explicit findings as to how the additional funds would benefit the children and how the supplemental award was related to the factors identified in § 46b-84 (d), especially when the defendant also is ordered to maintain health insurance coverage for the children and to pay 50 percent of the unreimbursed costs of the children's health care and extracurricular activities. See *Maturo* v. *Maturo*, supra, 296 Conn. 102.

For the foregoing reasons, the court erred by misapplying the child support guidelines' principles when it awarded the plaintiff 15 percent of the defendant's future bonus income as a supplemental child support order. "Affirming the judgment with respect to the child support orders would amount to sanctioning the court's bypassing of and noncompliance with the guidelines' clear and firm requirements regarding the use of deviation criteria and presumptive support amounts. We decline to do so, especially in light of the growing line of cases in which our Supreme Court has stated unequivocally that the guidelines and their underlying principles limit the discretion accorded to trial courts tasked with fashioning child support award in high income, high asset familial situations." *Fox* v. *Fox*, supra, 152 Conn. App. 640. Accordingly, as we discuss in part IV of this opinion, the proper remedy is to remand

the matter for the court to reconsider all of its financial orders.

## II

Next, we address the plaintiff's claim concerning the court's failure to reserve jurisdiction to enter a postsecondary educational support order for the parties' minor children. We conclude that the court violated General Statutes § 46b-56c (b) (1)[12] by failing to notify the parties that it could not enter a postsecondary educational support order at a later date if it did not enter such an order, or reserve jurisdiction to enter such an order, in the judgment of dissolution.

The following additional facts are relevant here. First, although the parties presented no agreement to the court providing for a postsecondary educational support order, or even an agreement concerning the reservation of jurisdiction over a postsecondary educational support order, the record indicates that both parties, in their respective proposed orders to the court, requested that the court reserve jurisdiction to enter a postsecondary educational support order under § 46b-56c (c).[13] Presumably, the parties assumed, given their matching positions, that the court would reserve jurisdiction to enter, at another time, orders regarding payment of the children's postsecondary educational expenses, and neither party directly focused on addressing the actual merits of an educational support order at trial.

In the judgment of dissolution, the court, pursuant to § 46b-56c (c), determined that "had the family remained intact, the parties would not have financially supported their minor children. Although both parties have undergraduate degrees, there is no evidence in the record to support the court's award of a postsecondary educational support order. Thus, the court will not reserve jurisdiction to issue orders concerning the postsecondary education of the parties' minor children." Further, the court reiterated that it "[made] neither any postsecondary education[al] support orders nor [reserved] jurisdiction . . . over any issues related to postsecondary education[al] support of the minor children. [It] did not find that it was more likely than not that the parents would have provided postsecondary education[al] support to the minor children if the family were intact."[14]

The record contains no indication that the court abided by the requirements promulgated under § 46b-56c (b) (1), which obligated the court to inform the parties that they could not request a postsecondary educational support order at a later time if the court did not enter such an order at the time of dissolution. If a court does not enter an educational support order at the time of dissolution, such an order cannot be entered subsequently absent a provision in the judgment of dissolution stating that a parent may file a motion or petition for an educational support order at

a later date. General Statutes § 46b-56c (b) (1). Furthermore, "[i]f no educational support order is entered at the time of entry of a decree of dissolution . . . the court shall inform the parents that no educational support order may be entered thereafter. The court may accept a parent's waiver of the right to file a motion or petition for an educational support order upon a finding that the parent fully understands the consequences of such waiver." General Statutes § 46b-56c (b) (1).

We conclude that the court violated § 46b-56c (b) (1) when it failed to advise the parties that no postsecondary educational support order could be entered later if the court did not enter such an order at the time of the judgment of dissolution or reserve jurisdiction to enter such an order. Here, the court decided not to enter a postsecondary educational support order for the parties' minor children and, despite requests by both parties to reserve jurisdiction to enter such an order,[15] the judgment of dissolution did not contain a provision stating that either party could request a postsecondary education order at a later time. Although the court was not bound to accept the parties' proposed orders to reserve jurisdiction, under § 46b-56c (b) (1), the court had an obligation, prior to the entry of the judgment of dissolution, to inform the parties that it would not be entering a postsecondary educational support order or reserving jurisdiction to enter one at a subsequent date because both parties had requested that the court reserve jurisdiction to permit them to request a postsecondary educational support order at a later time.[16] This would have given them notice that the court did not view their matching proposed orders as a sufficient basis for the reservation of jurisdiction, and would have provided them with a fair opportunity to more fully address what was necessary to achieve either a reservation of jurisdiction or a proper order concerning their minor children's postsecondary education at the time of the dissolution.[17] The court failed to fulfill that obligation. See, e.g., *Robinson* v. *Robinson*, 86 Conn. App. 719, 727–28, 862 A.2d 326 (2004) (reversing financial orders in judgment of dissolution due to court's failure to abide by § 46b-56c [b] [1]).

During the proceedings on remand, the court must revisit the issue of the postsecondary educational support orders with the parties. If one or both of the parties requests that the court reserve jurisdiction over any such order, and the court is disinclined to reserve jurisdiction over such an order to any subsequent date, it should so inform the parties and advise them of the consequences if one of them fails to request such an order at the time of the proceedings on remand. If after being so informed, one or both of the parties requests the entry of an educational support order, the court shall conduct a hearing in accordance with § 46b-56 (c).[18] In the alternative, upon a finding that the parties

fully understand the consequences of a waiver, the court may accept from the parties a waiver of their right to seek a postsecondary educational support order.

## III

Last, we address the plaintiff's claim that the court abused its discretion by ordering the parties to submit to arbitration to resolve potential disputes regarding the distribution of their personal property. We agree.

The following additional facts are relevant here. Paragraph thirteen of the judgment of dissolution contains the following order concerning the distribution of the parties' personal property: "13. Personal Property. The personal property of the parties shall be divided by agreement between the parties within thirty (30) days from the date hereof. If the parties are not able to agree, then ownership of any disputed assets shall be decided by binding arbitration to be conducted by an independent arbiter appointed by the court, with the fees therefrom to be divided equally between the parties." The record does not indicate that the parties entered into a voluntary arbitration agreement to resolve disputes arising from the distribution of their personal property.

The plaintiff asserts that the foregoing order constitutes an improper delegation of the court's judicial functions; namely, its exclusive authority to divide the personal property of the parties in a dissolution action. The defendant counters by arguing that dissolution courts have the authority to order parties to agree to arbitration to resolve such disputes.

We recently addressed the question of whether, absent a voluntary arbitration agreement executed between the parties, a court may order parties in a dissolution action to submit to arbitration in *Budrawich* v. *Budrawich*, 156 Conn. App. 628,     A.3d     (2015). In *Budrawich*, the dissolution court ordered the parties to submit to arbitration to resolve a dispute concerning unreimbursed expenses each party incurred on behalf of their minor children. Id., 648. Prior to the court's order, the parties had not executed a voluntary agreement wherein they agreed to seek arbitration to resolve the disputed expenses issue. Id., 649. This court concluded that dissolution courts are not vested with the authority to order parties to submit to arbitration absent a voluntary agreement. Id. "Pursuant to General Statutes § 46b-66 (c),[19] parties may agree, with the court's permission, to pursue arbitration to resolve certain issues related to their dissolution. A court does not, however, have the authority to order parties to submit such issues to arbitration absent a voluntary arbitration agreement executed between the parties. Arbitration is a creature of contract and without a contractual agreement to arbitrate there can be no arbitration. . . . [T]he basis for arbitration in a particular case

is to be found in the written agreement between the parties. . . . Parties who have contracted to arbitrate certain matters have no duty to arbitrate other matters which they have not agreed to arbitrate. Nor can the courts, absent a statute, compel the parties to arbitrate those other matters." (Citation omitted; internal quotation marks omitted.) Id., 648–49.

Here, as in *Budrawich*, the parties did not execute a voluntary agreement wherein they have agreed to submit to arbitration to resolve any dispute concerning the distribution of their personal property. Therefore, we conclude that the court abused its discretion by ordering the parties to submit to arbitration involuntarily. On remand, the court shall not order the parties to submit to arbitration involuntarily to resolve any disputes arising out of their dissolution.[20]

## IV

We must now determine whether our conclusion that the court erred when it entered orders concerning supplemental child support and the distribution of the parties' personal property, and when it violated § 46b-56c (b) (1) by failing to notify the parties that it could not enter a postsecondary educational support order for their minor children at a later date if it did not enter such an order or reserve jurisdiction to enter such an order, in the judgment of dissolution, requires the court to reconsider all of its financial orders. Individual financial orders in a dissolution action are "part of the carefully crafted mosaic that comprises the entire asset reallocation plan. . . . Under the mosaic doctrine, financial orders should not be viewed as a collection of single disconnected occurrences, but rather as a seamless collection of interdependent elements. Consistent with that approach, our courts have utilized the mosaic doctrine as a remedial device that allows reviewing courts to remand cases for reconsideration of all financial orders even though the review process might reveal a flaw only in the alimony, property distribution or child support awards." (Citation omitted; internal quotation marks omitted.) *Marshall* v. *Marshall*, 119 Conn. App. 120, 135–36, 988 A.2d 314, cert. granted in part, 296 Conn. 908, 993 A.2d 467 (2010) (appeal withdrawn November 18, 2010).

"Every improper order, however, does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors." *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999). "In other words, an order is severable if its impropriety does not place the correctness of the other orders in question." (Internal quotations marks omitted.) *Maturo* v. *Maturo*, supra, 296 Conn. 124–25. We conclude that reversing the court's improper supplemental child support order in the present case inevitably

impacts all of the other financial orders.

As previously discussed, in fashioning its child support order, the court failed to apply properly the principles of the child support guidelines. Its order that the defendant pay the plaintiff 15 percent of his bonus income impermissibly allows the plaintiff to dip into the same income twice until his salary, coupled with his bonus income, exceeds his imputed earning capacity. The alimony order awarded to the plaintiff, $10,000 per month and 20 percent of the defendant's bonus income for five years, is based on the same imputed earning capacity as the child support orders, and like them, is also problematically articulated so as to create the potential for an alimony award that permits the plaintiff to "double dip," as discussed in part I of this opinion. In addition, in view of any educational support order the court may enter, it will have to reconsider all of its financial orders, including the property distribution orders. See *Robinson* v. *Robinson*, supra, 86 Conn. App. 728. We are unable to determine whether the court's financial awards would remain intact after reconsidering its orders concerning supplemental child support and the distribution of the parties' personal property, and its failure to reserve jurisdiction to enter a postsecondary educational support order at a later date. Therefore, the court must reconsider all of the financial orders, including the property distribution orders, on remand.

The judgment is reversed only as to all financial orders and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion BEACH, J., concurred.

[1] Included in the financial orders to be reconsidered on remand are the orders entered by the court in paragraphs 2 and 4 through 19 in the judgment of dissolution.

[2] We need not reach the plaintiff's claims regarding alimony, the marital home, the Louis XVI armoire, or the court's failure to enter an order that the defendant contribute to the cost of the minor children's private school tuitions on the basis of our conclusion that the court must reconsider all of its financial orders as a result of the errors it committed when entering the supplemental child support order and personal property distribution order, and when it failed to provide the parties with notice regarding its decision not to reserve jurisdiction over a postsecondary educational support order for the parties' minor children.

[3] "In appropriate circumstances in marital dissolution proceedings, a trial court may base its financial awards on the earning capacity rather than the actual earned income of the parties. . . . Such circumstances include those where there is evidence that a party voluntarily quit or avoided employment in his or her field of expertise and where there is evidence of that party's previous earnings." (Citations omitted.) *Paddock* v. *Paddock*, 22 Conn. App. 367, 371, 577 A.2d 1087 (1990).

[4] The court indicated it was "unwilling to also impute a specific dollar amount or range for a bonus to which the defendant may be entitled given the uncertainty, variability and complex conditions of bonuses." Unfortunately, the court's failure to consider the potential variability of the defendant's bonus income contributed to the entry of a supplemental child support order that does not withstand scrutiny.

[5] The order on unreimbursed medical expenses is improper because it fails to calculate the presumptive percentage of unreimbursed medical and dental expenses each party would be responsible for under the child support

guidelines and whether this order is a deviation. Presumptive health care contributions are based on the parents' net weekly *disposable* incomes, as opposed to their net weekly incomes, and are calculated according to the child support guidelines. See Regs., Conn. State Agencies § 46b-215a-2b (g) (3). Under this section, the amount of child support and alimony paid by or received from each parent are required factors in the calculation. Id., § 46b-215a-2b (g) (3); see *Tracey* v. *Tracey*, 97 Conn. App. 122, 127, 902 A.2d 729 (2006).

[6] In *Dowling* v. *Szymczak*, supra, 309 Conn. 390, our Supreme Court appeared to further refine the analysis it set forth in *Maturo* concerning the application of the child support guidelines in exceptionally high income cases. In *Dowling*, our Supreme Court stated that, despite the principle that the percentage of parties' combined net weekly income allocated for child support should decline as the parties' income level rises, courts in exceptionally high income cases are not required to enter a child support award calculated on the basis of a percentage lower than the presumptive percentage contained in the child support guidelines. Id., 404–405; see also Regs., Conn. State Agencies § 46b-215a-2b (f). Instead, the court noted that the legislature and the Connecticut Commission for Child Support Guidelines are responsible for updating the guidelines and setting forth the precise presumptive amounts and percentages for courts to apply in high income cases. *Dowling* v. *Szymczak*, supra, 404.

[7] "Section 46b-215a-3 (b) of the Regulations of Connecticut State Agencies lists the six criteria that may justify deviation from the presumptive support amounts as, (1) other financial resources available to a parent that are not included in the definition of net income, but could be used by such parent for the benefit of the child or for meeting the needs of the parent, (2) [e]xtraordinary expenses for care and maintenance of the child, (3) [e]xtraordinary parental expenses . . . that are not considered allowable deductions from gross income, but which are necessary for the parent to maintain a satisfactory parental relationship with the child, continue employment, or provide for the parent's own medical needs, (4) [n]eeds of a parent's other dependents . . . [where] a parent may be legally responsible for the support of individuals other than the child whose support is being determined, (5) [c]oordination of total family support when considerations involving the division of assets, provision of alimony and tax planning will not result in a lesser economic benefit to the child, and (6) [s]pecial circumstances relating to reasons of equity, including shared physical custody, extraordinary disparity in parental income, the best interests of the child and [o]ther equitable factors." (Internal quotation marks omitted.) *Maturo* v. *Maturo*, supra, 296 Conn. 92 n.7.

[8] In *Maturo*, the dissolution court set forth reasons for its deviation from the child support guidelines. *Maturo* v. *Maturo*, supra, 296 Conn. 99. The court concluded that the dissolution court failed to apply the deviation criteria correctly and failed to explain why an application of the child support guidelines was inequitable or inappropriate. Id., 99–100.

[9] General Statutes § 46b-84 (d) provides: " In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child."

[10] In *Misthopoulos*, as was the case in *Maturo*, the dissolution court set forth reasons for its deviation from the child support guidelines. *Misthopoulos* v. *Misthopoulos*, supra, 297 Conn. 370. Our Supreme Court concluded that the dissolution court failed to apply the deviation criteria properly and failed to explain why an application of the child support guidelines was inequitable or inappropriate. Id.

[11] The record does not contain the amount of the defendant's bonus income for the 2013 tax year. The record indicates, however, that he received sizable bonuses in the past and that he expected a "large bonus" in 2013, so it is possible that the parties' combined net weekly income could exceed the $4000 threshold.

[12] General Statutes § 46b-56c (b) (1) provides: "On motion or petition of a parent, the court may enter an educational support order at the time of entry of a decree of dissolution, legal separation or annulment, and no educational support order may be entered thereafter unless the decree explicitly provides that a motion or petition for an educational support order

may be filed by either parent at a subsequent date. If no educational support order is entered at the time of entry of a decree of dissolution, legal separation or annulment, and the parents have a child who has not attained twenty-three years of age, the court shall inform the parents that no educational support order may be entered thereafter. The court may accept a parent's waiver of the right to file a motion or petition for an educational support order upon a finding that the parent fully understands the consequences of such waiver."

[13] General Statutes § 46b-56c (c) provides: "The court may not enter an educational support order pursuant to this section unless the court finds as a matter of fact that it is more likely than not that the parents would have provided support to the child for higher education or private occupational school if the family were intact. After making such finding, the court, in determining whether to enter an educational support order, shall consider all relevant circumstances, including: (1) The parents' income, assets and other obligations, including obligations to other dependents; (2) the child's need for support to attend an institution of higher education or private occupational school considering the child's assets and the child's ability to earn income; (3) the availability of financial aid from other sources, including grants and loans; (4) the reasonableness of the higher education to be funded considering the child's academic record and the financial resources available; (5) the child's preparation for, aptitude for and commitment to higher education; and (6) evidence, if any, of the institution of higher education or private occupational school the child would attend."

[14] It appears the court concluded, and the plaintiff agrees, that it could not reserve jurisdiction absent evidence sufficient for a finding that it was more likely than not that the parents would have provided postsecondary educational support to the minor children if the family had remained intact. Although we are not called upon to address that issue in this appeal, there is no appellate authority that indicates that such a finding is a necessary predicate to reserving jurisdiction to enter an educational support order at a date subsequent to the entry of the judgment of dissolution. In *Glenn* v. *Glenn*, 133 Conn. App. 397, 35 A.3d 376 (2012), the dissolution court rendered a judgment that incorporated the parties' written settlement agreement, which provided that the court would "[reserve] jurisdiction to allocate between [the parties] any and all college tuition and expenses incurred on behalf of the [then] minor child upon post-judgment motion of either party, pursuant to . . . § 46b-56c." (Internal quotation marks omitted.) Id., 399. Two years later, the defendant filed a postdissolution motion seeking an educational support order, and the court entered such an order without making the finding that it was more likely than not that the parents would have provided support to the child for higher education if the family were intact. Id. This court concluded that "the statute clearly provides that the court must make the necessary factual finding *before* it can enter an educational support order. . . . We are convinced that § 46b-56c (c), as written, cannot be read in any other manner." (Emphasis in original; internal quotations marks omitted.) Id., 402. Nevertheless, we concluded in *Glenn* that the failure to make the express finding at the hearing on the defendant's postdissolution motion was harmless because there was ample evidence in the record of that hearing to support such a finding. Id., 402–403.

Although it may be helpful for the court to make such a finding at the time of the dissolution because the court is assessing "whether the intention to assume a contingent obligation to be performed at some future time ('that the parents *would have provided* support') existed within a perhaps no more than hypothetical past setting ('if the family *were* intact')"; (emphasis in original) *Whelan* v. *Whelan*, Superior Court, judicial district of Windham at Putnam, Docket No. FA-04-4001044-S (December 11, 2014); we conclude, under the plain meaning rule; see General Statutes § 1-2z; that § 46b-56c does not require that this predicate finding be made at the time of the entry of the decree of dissolution. We note that the obligation to make a finding is contained in subsection (c) of § 46b-56c, relating to the time when the court is actually considering issuing an educational support order, not in subsection (b) (1), where the court is permitted explicitly to provide in the dissolution decree that a motion or petition for an educational support order may be filed by either parent at a subsequent date.

[15] The parties' requests for the court to reserve jurisdiction came in the form of their matching proposed orders to the court rather than in the form of a motion. We find this to be a distinction without a difference. The filing of a motion has never been required for a court in a dissolution action to enter a postsecondary educational support order as part of its judgment

of dissolution when one or both parties have submitted proposed orders requesting a postsecondary educational support order. We further note that the plaintiff completed and submitted the standard complaint form for a dissolution action available in 2011, JD-FM-159 (Rev. 11-09), on which she checked the box requesting that the court enter a postsecondary educational support order. The defendant completed and submitted the standard answer form for a dissolution action available in 2011, JD-FM-160 (Rev. 11-10), on which he checked a box stating that he agreed with the plaintiff's request for the court to enter a postsecondary educational support order. In any event, here the parties did not ask the court to enter a postsecondary educational support order in their proposed orders; instead, they requested that the court *reserve jurisdiction* to enter a postsecondary educational support order at a later time. A request to reserve jurisdiction does not necessitate the filing of a motion.

[16] The concurrence states that the majority opinion "promulgates a scenario by which, in any fully contested family matter, after a judge finishes writing its opinion where it does not order postsecondary education orders or reserve jurisdiction to do so, it must sua sponte call the parties back to court and give them notice of its orders relative to this issue, before releasing its decision." We respectfully disagree with the concurring opinion's characterization of the majority opinion. The majority opinion requires a court in a dissolution action to provide notice to the parties of its intent to forego entering a postsecondary educational support order, or reserving jurisdiction to enter one, *prior* to rendering its judgment of dissolution. The court should provide this notice and offer the parties an opportunity to discuss the matter at some point prior to the conclusion of the dissolution proceedings and, in any event, well before it begins drafting its memorandum of decision wherein it enters its orders in relation to the parties' dissolution.

Furthermore, the concurring opinion ponders why a court cannot comply with § 46b-56c (b) (1) simply by informing the parties in its memorandum of decision that it has declined to enter a postsecondary educational support order or to reserve jurisdiction to enter one. We respectfully observe that any notice first provided in the court's judgment of dissolution would be, for practical purposes, untimely. By that point, the parties would no longer have the opportunity to discuss the matter before the court in an attempt to gain appropriate relief prior to the time that the court enters its judgment.

[17] Although we recognize that stipulations are distinct from matching proposed orders submitted by parties to a court, we nonetheless find it compelling that "[o]rdinarily . . . stipulations of the parties should be adopted by the court. . . . If, for some reason, the court cannot adopt the stipulation of the parties, it should state its disapproval of the stipulation and the reasons for its disapproval on the record." (Citation omitted.) *Central Connecticut Teachers Federal Credit Union* v. *Grant*, 27 Conn. App. 435, 438, 606 A.2d 729 (1992). A court's failure to afford such notice to parties and to provide them with an opportunity to discuss its disinclination to adopt their stipulation constitutes clear error. See id. (court committed clear error by disregarding stipulation and rendering judgment "without first notifying the parties of its disapproval and affording them an opportunity to litigate the issues fully"). The foregoing principles are applicable to the analogous situation in this case, wherein the parties submitted matching proposed orders to the court requesting that it reserve jurisdiction to enter a postsecondary educational support order at a later date and the court failed to alert the parties, prior to rendering the judgment of dissolution, that it was not adopting their matching proposed orders.

[18] We note that, on the basis of the record before us, the parties' eldest child is now seventeen years old and their youngest child is now fourteen years old.

[19] General Statutes § 46b-66 (c) provides: "The provisions of chapter 909 shall be applicable to any agreement to arbitrate in an action for dissolution of marriage under this chapter, provided (1) an arbitration pursuant to such agreement may proceed only after the court has made a thorough inquiry and is satisfied that (A) each party entered into such agreement voluntarily and without coercion, and (B) such agreement is fair and equitable under the circumstances, and (2) such agreement and an arbitration pursuant to such agreement shall not include issues related to child support, visitation and custody. An arbitration award in such action shall be confirmed, modified or vacated in accordance with the provisions of chapter 909."

[20] Had the parties voluntarily executed an arbitration agreement, the court, properly, may have ordered them to submit to arbitration provided it was satisfied, after a thorough inquiry, that each party entered into the agreement

voluntarily and without coercion, that the agreement was fair and equitable under the circumstances and the agreement and an arbitration pursuant to such agreement would not include issues related to child support visitation and custody. Had an arbitration then occurred, the arbitration award may have been confirmed, modified or vacated by the court in accordance with the civil arbitration procedures in chapter 909. See General Statutes § 46b-66 (c).